# SETTLEMENT AGREEMENT

This Settlement Agreement ("Settlement Agreement") is entered into as of September 6, 2023 (the "Execution Date"), by and between the Plaintiffs and proposed Class Representatives Ahmed, Abdul, Amir, Siddiqa, Rahmatullah, Fatima, and Mursal Sadat (collectively, "Plaintiffs"), on behalf of themselves and all putative Class Members as defined below, and Defendants U.S. Department of Homeland Security ("DHS"), Alejandro Mayorkas in his official capacity as Secretary of Homeland Security, U.S. Citizenship and Immigration Services ("USCIS"), Ur Mendoza Jaddou in her official capacity as Director of USCIS, and Ted H. Kim in his official capacity as Associate Director of the Refugee, Asylum and International Operations Directorate at USCIS (collectively, "Defendants," and together with the Plaintiffs, the "Parties").

## RECITALS

**WHEREAS,** the Extending Government Funding and Delivering Emergency Assistance Act, Pub. L. 117–43, § 2502(c), 135 Stat. 344, 377 (2021), states: "With respect to an application for asylum under section 208 of the Immigration and Nationality Act (8 U.S.C. 1158) filed by an individual described in subsection (a), the Secretary of Homeland Security shall— (1) conduct the initial interview on the asylum application not later than 45 days after the date on which the application is filed; and (2) in the absence of exceptional circumstances, issue a final administrative adjudication on the asylum application within 150 days after the date the application is filed."

**WHEREAS,** Plaintiffs filed a Class Action Complaint ("Complaint") on April 19, 2023 alleging that Defendants had a common policy or practice of not complying with the 150-day asylum adjudication deadline under Section 2502 of the Extending Government Funding and Delivering Emergency Assistance Act, Pub. L. 117-43, 135 Stat. 344 (2021), and that this conduct violated the Administrative Procedure Act and the Mandamus and Venue Act of 1962;

**WHEREAS,** on May 9, 2023, Plaintiffs filed a motion for class certification and a motion for classwide preliminary injunction;

**WHEREAS,** on June 13, 2023, Defendants filed a motion to dismiss and opposition to class certification and preliminary injunction;

**EXHIBIT A**

**WHEREAS**, the Court set a hearing on Plaintiffs' motions and Defendants' motion for July 27, 2023, and, at the request of the Parties, continued the hearing until September 11, 2023;

**WHEREAS**, as of the date of this Agreement, Plaintiffs' motions and Defendants' motion remain pending;

**WHEREAS**, the Parties, after an arms-length negotiation, have reached a settlement culminating in the execution of this Settlement Agreement;

**WHEREAS**, Defendants have agreed to settlement of the Litigation, to provide the relief detailed herein, and to withdraw their opposition to Plaintiffs' motion for class certification;

**WHEREAS**, the Parties have agreed to stipulate to certification of the class defined in this Settlement Agreement for purposes of settlement only;

**WHEREAS**, Plaintiffs have agreed to settle all Claims alleged in their Complaint and to dismiss with prejudice this Litigation within ten (10) days of the Execution Date;

**WHEREAS**, the Parties have agreed to request that the Court retain jurisdiction over the Litigation, notwithstanding Plaintiffs' voluntary dismissal of their Claims, to enforce the terms of this Settlement Agreement;

**WHEREAS**, Defendants announced the extension of parole of certain Afghan nationals under section 212(d)(5) of the Immigration and Nationality Act, at 8 U.S.C. § 1182(d)(5), and represented that they are implementing a streamlined process to consider extending the initial parole period for eligible Afghan nationals with pending asylum applications on a discretionary case-by-case basis, with the aim of preventing lapses in parole;

**NOW**, **THEREFORE**, it is hereby **AGREED**, by and among the Parties, through their respective attorneys, subject to the approval of the Court pursuant to Federal Rule of Civil Procedure 23(e), in consideration of the mutual benefits flowing to the Parties hereto from the Settlement Agreement, the Parties agree to a full and complete settlement of the Litigation on the following terms and conditions:

1. **DEFINITIONS**

   The following terms shall have the meanings defined in this Section wherever used in this Settlement Agreement:

   1.1 "**Class Member**" or "**Class Members**" means all individuals identified under Section 2502(a)(1)(A) of the Extending Government Funding and Delivering Emergency Assistance Act, Pub. L. No. 117-43, 135 Stat. 344 (2021), who have filed or will file an application for asylum.

   1.2 "**Class Counsel**" means all counsel of record for Plaintiffs.

   1.3 "**Claims**" refers to all causes of action, claims, or failures to act that were alleged or asserted in the Complaint.

   1.4 "**Court**" means the Court having jurisdiction over this Litigation, at any stage (currently, the United States District Court for the Northern District of California).

   1.5 "**Execution Date**" means September 6, 2023.

   1.6 "**Expiration Date**" means (1) October 31, 2025, or (2) when Defendants represent in a public filing with the Court that fewer than 200 Class Member asylum applications are pending, whichever occurs sooner.

   1.7 "**Case**" or "**Litigation**" means the Class Action Complaint filed on April 19, 2023, in the United States District Court for the Northern District of California, Case No. 4:23-cv-01892-JST, and all subsequent pleadings and proceedings thereto.

   1.8 "**Settlement**" means the release of claims between the Parties pursuant to the terms of this Settlement Agreement.

   1.9 "**Settlement Agreement**" means this settlement agreement.

   1.10 "**Status Report**" or "**Deadline Report**" means the periodic reports filed by Defendants as described in Section 3 of this Settlement Agreement.

   1.11 "**Adjudicate**" or "**Adjudicated**" means that the Class Member's asylum application was granted, denied, administratively closed, or referred to immigration court for defensive removal proceedings.

2. **OAW ASYLUM ADJUDICATION DEADLINES AND REQUIREMENTS**

The Parties agree to the following deadlines and requirements related to Class Members asylum applications:

2.1 Defendants will adjudicate fifty percent (50%) of Class Member asylum applications, that were filed on or before June 3, 2023, by October 31, 2023. Eighty-five percent (85%) of the applications adjudicated under this Section 2.1 will be applications that are or were pending longer than 150 days.

2.2 Defendants will adjudicate sixty-five percent (65%) of Class Member asylum applications that were filed on or before August 3, 2023, by December 31, 2023. Eighty-five (85%) of the applications adjudicated under this Section 2.2 will be applications that are or were pending longer than 150 days.

2.3 Defendants will adjudicate ninety percent (90%) of Class Member asylum applications that were filed on or before December 2, 2023, by April 30, 2024. Eighty-five percent (85%) of the applications adjudicated under this Section 2.3 will be applications that are or were pending longer than 150 days.

2.4 Defendants will adjudicate ninety percent (90%) of Class Member asylum applications that were filed on or before February 1, 2024, and that are or were pending longer than 150 days, by June 30, 2024.

2.5 Defendants will adjudicate at least ninety percent (90%) of Class Member asylum applications, that were filed on or after February 2, 2024, no later than 150 days after the date of filing.

3. **PUBLIC REPORTING REQUIREMENTS**

The Parties agree to the following public reporting requirements:

3.1 Starting thirty (30) days after this Settlement Agreement is approved by this Court, and every thirty (30) days thereafter until the Expiration Date, unless otherwise stated below, Defendants shall file public Status Reports with the Court:

      3.1.1    The public Status Reports will include the following information, current as of two weeks before the date of each Status Report: (i) the total number of Class Member asylum applications received; (ii) the total number of Class Member asylum applications adjudicated; (iii) the total number of Class Member asylum applications that have been granted; (iv) the total number of Class Member asylum applications that have been denied; (v) the total number of Class Member asylum applications that have been administratively closed; (vi) the total number of Class Member asylum applications that have been referred to immigration court for defensive removal proceedings; (vii) the total number and percentage of Class Member asylum applications that are pending; (viii) the total number of Class Member asylum applications that have been pending more than 150 days, and the total percentage compared to overall Class Member asylum applications; (ix) for adjudicated Class Member asylum applications, the average adjudication time from filing to completion; and (x) for pending Class Member asylum applications, the average number of days from filing that those cases have been pending.

3.2    To demonstrate compliance with the October 31, 2023, December 31, 2023, April 30, 2024, and June 30, 2024, deadlines set forth above in Sections 2.1, 2.2, 2.3 and 2.4, Defendants shall also file four additional Status Reports (the "Deadline Reports") with the Court on November 14, 2023, January 15, 2024, May 14, 2024, and July 15, 2024, respectively. The Deadline Reports will contain the following information that is necessary to establish Defendants' compliance with Sections 2.1, 2.2, 2.3 and 2.4:

      3.2.1    The November 14, 2023, Deadline Report will include: (i) the total number of Class Member asylum applications that were filed on or before June 3, 2023; (ii) the total number and percentage of Class Member asylum

5

applications filed on or before June 3, 2023, that were still pending on November 1, 2023; (iii) the total number and percentage of Class Member asylum applications filed on or before June 3, 2023, that were adjudicated by October 31, 2023; (iv) the total number and percentage of Class Member asylum applications filed on or before June 3, 2023, that were adjudicated within 150 days or less of being filed on or before October 31, 2023; and (v) the total number and percentage of Class Member asylum applications filed on or before June 3, 2023, that were adjudicated more than 150 days after being filed on or before October 31, 2023.

3.2.2 The January 15, 2024, Deadline Report will include: (i) the total number of Class Member asylum applications that were filed on or before August 3, 2023; (ii) the total number and percentage of Class Member asylum applications filed on or before August 3, 2023, that were still pending on January 1, 2024; (iii) the total number and percentage of Class Member asylum applications filed on or before August 3, 2023, that were adjudicated as of December 31, 2023; (iv) the total number and percentage of Class Member asylum applications filed on or before August 3, 2023, that were adjudicated within 150 days or less of being filed on or before December 31, 2023; and (v) the total number and percentage of Class Member asylum applications filed on or before August 3, 2023, that were adjudicated more than 150 days after being filed on or before December 31, 2023.

3.2.3 The May 14, 2024, Deadline Report will contain: (i) the total number of Class Member asylum applications that were filed on or before December 2, 2023; (ii) the total number and percentage of Class Member asylum applications filed on or before December 2, 2023, that were still pending on May 1, 2024; (iii) the total number and percentage of Class Member asylum applications filed on or before December 2, 2023, that were adjudicated as

6

of April 30, 2024; (iv) the total number and percentage of Class Member asylum applications filed on or before December 2, 2023, that were adjudicated within 150 days or less of being filed on or before April 30, 2024; and (v) the total number and percentage of Class Member asylum applications filed on or before December 2, 2023, that were adjudicated more than 150 days after being filed on or before April 30, 2024.

3.2.4   The July 15, 2024, Deadline Report will include: (i) the total number of Class Member asylum applications that were filed on or before February 1, 2024; (ii) the total number and percentage of Class Member asylum applications filed on or before February 1, 2024, that were still pending on July 1, 2024; (iii) the total number and percentage of Class Member asylum applications filed on or before February 1, 2024, that were adjudicated as of June 30, 2024; (iv) the total number and percentage of Class Member asylum applications filed on or before February 1, 2024, that were adjudicated within 150 days or less of being filed on or before June 30, 2024; (v) the total number and percentage of Class Member asylum applications filed on or before February 1, 2024, that were adjudicated more than 150 days after being filed on or before June 30, 2024; and (vi) the total number of Class Member asylum applications filed on or before February 1, 2024, that remained pending for more than 150 days.

3.3  To demonstrate compliance with the ninety percent (90%) timely adjudication requirement set forth above in Section 2.5, Defendants shall provide the following additional information in the public Status Reports filed after February 2, 2024, that is necessary to establish Defendants' compliance with Section 2.5: (i) the total number of Class Member asylum applications that were received on or after February 2, 2024; (ii) the total number and percentage of Class Member asylum applications received on or after February 2, 2024, that are pending more than 150

days; (iii) the total number and percentage of Class Member asylum applications received on or after February 2, 2024, that are pending less than 150 days; (iv) the total number and percentage of Class Member asylum applications received on or after February 2, 2024, that have been adjudicated; (v) the total number and percentage of Class Member asylum applications received on or after February 2, 2024, that were adjudicated within 150 days or less of being filed; and (vi) the total number and percentage of Class Member asylum applications received on or after February 2, 2024, that were adjudicated more than 150 days after being filed.

3.4   Starting thirty (30) days after this Settlement Agreement is approved by this Court, and every thirty (30) days thereafter until December 31, 2023, and then every sixty (60) days thereafter until December 31, 2024, Defendants will provide the following information relating to extension of parole in each Status Report, current as of two weeks before the date of each Status Report: (i) the total number of Class Members whose parole expired before Defendants reached a decision on whether to extend the parole period of the Class Member and whose asylum applications remained pending when their initial term of parole expired, as of the date of each Status Report; (ii) the total number of Class Members for whom Defendants determined to extend their parole period before their initial term of parole expired; and (iii) the number of Class Members whose parole will expire during the reporting period for the next Status Report.

3.5   Defendants will file all Status Reports and Deadline Reports on the docket of this Case and will also post those reports to USCIS's Class Action, Settlement Notices and Agreements page: https://www.uscis.gov/laws-and-policy/other-resources/uscis-class-action-settlement-notices-and-agreements.

4. **DISMISSAL OF LITIGATION**

   4.1   Plaintiffs agree to settle the Claims alleged in the Complaint and to voluntarily dismiss the Litigation with prejudice within ten (10) court days of the Execution

8

Date.

4.2 The Parties agree that the Court shall retain jurisdiction with respect to implementation and enforcement of the terms of the Settlement Agreement. All Parties hereto submit to the jurisdiction of the Court for purposes of implementing and enforcing the Settlement. Any action to enforce this Settlement Agreement shall be commenced and maintained only in the Court.

5. **MISCELLANEOUS PROVISIONS**

    5.1 There will be no restrictions on the publicity of this Settlement Agreement.

    5.2 The Parties (i) acknowledge that it is their intent to consummate this Settlement Agreement, (ii) agree to cooperate in good faith to the extent reasonably necessary to effect and implement all terms and conditions of the Settlement Agreement and to exercise their best efforts to fulfill the foregoing terms and conditions of the Settlement Agreement, and (iii) agree to cooperate in good faith to obtain approval of the Settlement and to finalize the Settlement Agreement.

    5.3 This Settlement Agreement constitutes an integrated contract expressing the entire agreement of the Parties hereto relative to the subject matter discussed herein. No covenants, agreements or representations of any kind have been made by any Party to any other Party, except as expressly set forth herein. All prior discussions, negotiations, and agreements between the Parties are superseded by this Settlement Agreement. This Settlement Agreement shall not be waived or modified except by an agreement made in writing and approved by this Court.

    5.4 No supplement, modification, waiver, or amendment with respect to this Settlement Agreement shall be binding unless executed in writing by the Party against whom enforcement of such supplement, modification, waiver, or amendment is sought.

    5.5 This Settlement Agreement may be signed in counterparts by the Parties hereto and shall be valid and binding on each Party as if fully executed all on one copy. Facsimile or scanned signatures shall be deemed originals.

5.6   Each Party represents, warrants, and agrees that it is entering into this Settlement Agreement knowingly and voluntarily, without duress or undue influence, in good faith, and for sufficient consideration, and that this Settlement Agreement is fair, just, and reasonable as to that Party. Each Party enters into this Settlement Agreement with full knowledge of any and all rights that such Party may have by reason of the claims released herein. Each Party has had available to it such information as such Party or its counsel considered necessary to make an informed judgment concerning this Settlement Agreement, and has conducted such investigation as such Party's counsel deemed appropriate regarding the settlement and its rights and asserted rights in connection therewith.

5.7   If any provision of this Settlement Agreement is declared by an arbitrator, court, or other tribunal to be illegal or invalid, the validity of the remaining portions shall not be affected thereby, and the illegal or invalid portions shall be deemed not a part of this Settlement Agreement.

5.8   Plaintiffs (i) agree to serve as representatives of the Class; (ii) remain willing, able and ready to perform all of the duties and obligations of representatives of the Class; (iii) are familiar with the allegations in the Litigation, or have had such allegations described or conveyed to them; (iv) have consulted with Class Counsel about the Litigation, this Settlement Agreement, and the obligations of representatives of the Class; and (v) shall remain and serve as representatives of the Class until the terms of this Settlement Agreement are effectuated and fully implemented, this Settlement Agreement is terminated in accordance with its terms, or the Court at any time determines that Plaintiffs cannot represent the Class.

5.9   The Parties agree that the terms of the Settlement were negotiated in good faith and at arm's length by the Parties, and reflect a Settlement that was reached voluntarily after consultation with competent legal counsel.

5.10  Class Counsel, on behalf of the Class Members, are expressly authorized by

Plaintiffs to take all appropriate action required or permitted to be taken by the Class Members pursuant to the Settlement Agreement to effect its terms, and to enter into any modifications or amendments to the Settlement Agreement on behalf of the Class Members which they deem appropriate.

5.11 The Parties agree that each side shall bear its own costs and attorney's fees incurred during this Litigation.

## 6. EXPIRATION OF THIS AGREEMENT

6.1 This Settlement Agreement shall expire on (1) October 31, 2025, or (2) when Defendants represent in a public filing with the Court that fewer than 200 Class Member asylum applications are pending, whichever occurs sooner.

**IN WITNESS WHEREOF** the Parties hereof have caused this Settlement Agreement to be executed by their authorized representatives as of September 6, 2023.

Edward Hillenbrand (SBN 310872)
KIRKLAND & ELLIS LLP
edward.hillenbrand@kirkland.com
555 South Flower Street, Suite 3700
Los Angeles, CA 90071
Telephone: (213) 680-8400

Michael F. Williams (*pro hac vice*)
mwilliams@kirkland.com
1301 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Telephone: (202) 389-5000

NATIONAL IMMIGRANT JUSTICE CENTER
Richard Caldarone (*pro hac vice*)
rcaldarone@heartlandalliance.org
Keren Zwick (*pro hac vice*)
kzwick@heartlandalliance.org
Collen Cowgill (SBN 321542)
ccowgill@heartlandalliance.org
224 S. Michigan Avenue, Suite 600
Chicago, IL 60604
Telephone: (312) 660-1370
Fax: (312) 660-1505

*Attorneys for Plaintiffs*

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General, Civil Division
WILLIAM C. PEACHEY
Director, Office of Immigration Litigation, District Court Section
YAMILETH G. DAVILA
Acting Deputy Director
ALEXANDER J. HALASKA
Senior Litigation Counsel
RUTH ANN MUELLER (DC 1617339)
RICHARD G. INGEBRETSEN
Trial Attorneys
U.S. Department of Justice
Office of Immigration Litigation, District Court Section
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
Telephone: (202) 598-2445; Fax: (202) 305-7000
ruth.a.mueller@usdoj.gov

*Attorneys for Defendants*