## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| HEZBULLAH KAZIMI, <br><br> *Plaintiff*, <br><br> v. <br><br> UNITED STATES DEPARTMENT OF HOMELAND SECURITY, *et al.*, <br><br> *Defendants*. | Civil Action No. 1:24-cv-00340 <br><br> Judge Susan P. Baxter <br><br><br> **DEFENDANTS' RESPONSE IN SUPPORT OF ORDER TO SHOW CAUSE, REQUEST TO HOLD PRELIMINARY INJUNCTION BRIEFING IN ABEYANCE, AND REQUEST TO VACATE FEBRUARY 7, 2025, HEARING** |

On January 22, 2024, the Court directed the Parties to show cause why it should not dismiss Plaintiff's Complaint "for lack of jurisdiction in light of the settlement agreement in the class action *Ahmed v. DHS*, 4:23-cv-01892-JST (N.D. Ca. Sept 11, 2023) (ECF No. 105)." ECF No. 20. Defendants file the following response in support of this Court finding that it lacks jurisdiction to hear Plaintiff's claims. Furthermore, Defendants respectfully request this Court hold in abeyance their upcoming Preliminary Injunction response briefing—to be filed by January 31, 2025—and vacate the currently scheduled February 7 hearing date until it rules on the Order to Show Cause.[1]

## INTRODUCTION

Plaintiff Hezbullah Kazimi ("Plaintiff") is an Afghan asylum applicant who arrived in the United States in August of 2021 during Operation Allies Welcome ("OAW"). Complaint, ECF No. 1 ¶¶ 1, 5 ("Compl."). In September 2021, Congress passed the Extending Government Funding and Delivering Emergency Assistance Act, which requires the Department of Homeland Security

---

[1] The Court did not set a briefing schedule on Plaintiff's Motion for Preliminary Injunction. However, should the Court move forward with the February 7 hearing date, Defendants intend to provide the Court a response seven days prior to the hearing.

("DHS") to conduct the initial asylum interview for certain OAW parolees—such as Plaintiff—no later than forty-five (45) days after the application for asylum is filed and must also issue a final adjudication within 150 days after the application for asylum is filed, absent exceptional circumstances. *Id.* ¶ 38; Pub. L. 117-43, § 2502(c), 135 Stat. 344, 377 (2021) ("Section 2502").

Plaintiff brings this action under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701-706—requesting mandatory injunctive relief—and the Mandamus Act, 28 U.S.C. § 1361 (Compl. ¶¶ 66-83), because his application has been pending longer than 150 days since his last asylum interview on February 17, 2023. Compl. ¶ 46. This Court, however, should dismiss the Complaint with prejudice under the doctrine of collateral estoppel. Plaintiff is a mandatory class member in *Ahmed*,[2] and his claims have already been litigated in that matter.

Plaintiff meets the *Ahmed* class definition because he filed an application for asylum pursuant to Section 2502, and his application has been pending longer than 150 days in a government-controlled adjudication step. *See* Compl. ¶ 50; *Ahmed*, No. 4:23-cv-01892 (ECF No. 103-2 ¶ 1.1). As a member of the *Ahmed* Rule 23(b)(2) class, Plaintiff may not opt-out of the class action to pursue individual injunctive relief, and Defendants should not be forced to re-litigate identical cases in multiple fora, especially when both matters involve the same parties and claims.

Furthermore, as this Court has *sua sponte* requested briefing on the subject matter jurisdiction to hear this claim, Defendants respectfully request briefing on Plaintiff's Motion for Preliminary Injunction be held in abeyance and the February 7, 2025, hearing be vacated until the Court adjudicates the Order to Show Cause. Indeed, Plaintiff acknowledges he is "safe on U.S. soil,"

---

[2] The *Ahmed* parties stipulated to certification of the class defined in the settlement agreement for settlement purposes only. *Ahmed*, No. 4:23-cv-01982 (ECF No. 103-2 at 2). The Court granted Plaintiffs' Motion for Class Certification for purposes of settlement only. *Id.*; ECF No. 105.

Compl. ¶ 53, and thus is not facing an imminent injury. An abeyance goes towards the conservation of resources for both the parties and this Court while the Court adjudicates its Order to Show Cause.

For these reasons, Defendants support a full dismissal of Plaintiff's Complaint.[3]

## BACKGROUND

### I.    Overview of the OAW Asylum Adjudication Process

The Immigration and Nationality Act ("INA") requires "[t]he Attorney General" to "establish a procedure for the consideration of asylum applications filed under [8 U.S.C. § 1158(a)]." 8 U.S.C. § 1158(d)(1); *see also* 8 C.F.R. §§ 208.1-208.33. These procedures "shall provide that:"

> (i) asylum cannot be granted until the identify of the applicant has been checked against all appropriate records or databases maintained by the Attorney General and by the Secretary of State, including the Automated Visa Lookout System, to determine any grounds on which the alien may be inadmissible to or deportable from the United States, or ineligible to apply for or be granted asylum;

> (ii) in the absence of exceptional circumstances, the initial interview or hearing on the asylum application shall commence not later than 45 days after the date an application is filed; [and]

> (iii) in the absence of exceptional circumstances, final administrative adjudication of the asylum application, not including administrative appeal, shall be completed within 180 days after the date an application is filed[.]

8 U.S.C. § 1158(d)(5)(A)(i-iii). Section 1158(d), however, does not "create any substantive or procedural right or benefit that is legally enforceable by any party against the United States or its agencies or officers." 8 U.S.C. § 1158(d)(7).

In September 2001, Congress enacted the Extending Government Funding and Delivering

---

[3] Defendants note that a response to this Court's Order to Show Cause does not waive any Fed. R. Civ. P. 12(b) defenses. The government was served on January 8, 2025, and any motion to dismiss under Rule 12(b) is due on March 10, 2025.

Emergency Assistance Act. Pub. L 117-43, 135 Stat. 344 (Sept. 30, 2021). Section 2502(b) and (c) of that Act establishes certain immigration benefits for certain Afghan citizens or nationals paroled into the United States between July 31, 2021, and September 30, 2022, and for certain family members who were paroled into the United States after September 30, 2022, as defined in Section 2502(a) (collectively "OAW Applicants"). § 2502(a)-(c). Section 2502 provides:

> With respect to an application for asylum under § 208 of the [INA] (8 U.S.C. § 1158) filed by an individual described [above, i.e., OAW applicants], the Secretary of Homeland Security shall [] (1) conduct the initial interview on the asylum application not later than 45 days after the date on which the application is filed; and (2) in the absence of exceptional circumstances, issue a final administrative adjudication on the asylum application within 150 days after the date the application is filed.

§ 2502(c).

## II.    *Ahmed v. DHS* (N.D. Cal.) Class Action Litigation

On April 19, 2023, seven Plaintiffs brought a putative class action against United States Citizenship and Immigration Services ("USCIS"), DHS, and their officers, based on Defendants' alleged failure to timely adjudicate applications for asylum. *See Ahmed*, No. 4:23-cv-01892. More specifically, the Plaintiffs challenged alleged adjudication delays that "amount[ed] to a repudiation of the non-discretionary obligation imposed by Congress to timely adjudicate the asylum applications filed by [the Plaintiffs] and other similarly situated Afghan refugees within 150 days of filing" pursuant to § 2502(c). *Id*. at ECF No. 1 ¶ 7. In Count 1, the Plaintiffs sought a declaration that the government failed to satisfy a non-discretionary duty to adjudicate the Plaintiffs' asylum application within 150 days as § 2502(c) required. *Id*. ¶¶ 76-83. Count 2 sought an order under the APA, 5 U.S.C. § 706(1), to compel the Defendants to "expeditiously adjudicate [the plaintiffs'] asylum applications." *Id*. ¶¶ 84-91. And Count 3 sought a writ of mandamus to compel the

government to adjudicate their asylum applications. *Id*. ¶¶ 92-99.

Throughout the course of the litigation, the parties filed various motions including the Plaintiffs' motion for class certification, the Plaintiffs' motion for class-wide preliminary injunction, and the Defendants' cross-motion to dismiss. *Id*. at ECF Nos. 41, 44, 79. Each motion was fully briefed by the parties. *Id*. at ECF Nos. 80, 82, 84, 88. The Court set a hearing on the Plaintiffs' motions and the Defendants' cross-motion for July 27, 2023; at the request of the parties, the Court continued the hearing until September 11, 2023. *Id*. at ECF No. 94.

In the interim, the parties engaged in settlement discussion with Magistrate Judge Susan Van Keulen, beginning in early June, to resolve the litigation. *Id*. at ECF Nos. 78, 82. The parties also attended several mediation conferences over the course of three months. *Id*. at ECF Nos. 89, 92, 96, 98, 99, 100, 101, 102. On September 6, 2023, the parties signed the Settlement Agreement, thereby resolving all claims in the alleged Complaint. *Id*. at ECF No. 103-2.[4] The Settlement Agreement, among other things, imposed timing benchmarks for the asylum application adjudication process and quarterly deadline and status reports. *Id* at ECF No. 103-2 ¶¶ 2.1-3.5. The Settlement Agreement will expire on (1) October 31, 2025, or (2) when Defendants represent in a public filing with the Court that fewer than 200 asylum applications are pending, whichever occurs sooner. *Id*. at ECF No. 103-2 ¶ 6.1.

On September 11, 2023, District Judge Jon S. Tigar entered an order approving the settlement agreement. *Id*. at ECF No. 105. On September 15, 2023, the action was voluntarily dismissed with prejudice. *Id.* at ECF No. 107. As of January 28, 2025, the Settlement Agreement is

---

[4]    The Ahmed settlement agreement is publicly available at https://www.uscis.gov/sites/default/files/document/legal-docs/DKT103-2SettlementAgreement.pdf.

in place and USCIS remains in compliance with its terms.[5]

### III.   Statement of Facts in *Kazimi*[6]

Plaintiff, Hezbullah Kazimi, a citizen of Afghanistan, was paroled into the United States in August 2021 as part of Operation Allies Welcome.[7] Compl. ¶¶ 1, 41. On August 26, 2022, Plaintiff submitted an I-589, Application for Asylum and for Withholding of Removal ("asylum" or "asylum Application"), to USCIS. *Id*. ¶ 42. Plaintiff's request for asylum is allegedly based on fears of persecution based on his political opinion and membership in a particular social group (member of the Afghan National Army). *Id*. ¶ 44. On November 1, 2022, USCIS conducted its required asylum interview with Plaintiff in Arlington, Virginia. *Id*. ¶ 45. Plaintiff underwent a second asylum interview with USCIS on February 17, 2023, in Cleveland, Ohio. *Id*. ¶ 46. Since the completion of Plaintiff's interviews, Plaintiff alleges he, nor his counsel, had received any material updates regarding his application status. *Id*. ¶ 47. In March 2024, Plaintiff alleges a USCIS representative informed him there would be communications forthcoming. *Id*. ¶ 48. On June 18, 2024, Plaintiff received a communication from USCIS's Arlington Asylum Office noting issuing a decision within the allotted timeframe is "not always possible to do." *Id*. ¶ 49-50.

Plaintiff filed his complaint on December 12, 2024, seeking mandatory injunctive relief under the APA, or alternatively, a writ of mandamus based on a clear duty owed. *See id*. On

---

[5] Contrary to Plaintiff's response to this Court's Order to Show Cause, the *Ahmed* settlement continues to move forward. ECF No. 25 at 4 ("USCIS has not performed the duties imposed upon it by law…"); *See also Ahmed v. DHS Public Status Report - Class Member Asylum Data* (https://www.uscis.gov/sites/default/files/document/legal-docs/Ahmed_v_DHS_Asylum_Report_Jan_13_2025.pdf)

[6] For the purposes of this Response in Support of the Order to Show Cause, Defendants limit the statement of facts to those surrounding the procedural history of this litigation.

[7] Defendants acknowledge Plaintiff's asserted facts must be considered in Plaintiff's best light, but they do not concede the facts are accurate. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

December 13, 2024, Plaintiff filed a Motion for Preliminary Injunction seeking an order for the federal Defendants to "carry out their mandatory statutory duty and adjudicate [Plaintiff's] application." ECF No. 3, p. 2. Service was not executed by Plaintiff in regard to the Complaint or the Motion for Preliminary Injunction until January 8, 2025, but this Court has set a hearing on the Motion for Preliminary Injunction for February 7, 2025. ECF No. 17. On January 22, 2025, this Court entered this Order to Show Cause. ECF No. 20.

## STANDARD OF REVIEW

### I.    Collateral Estoppel Doctrine

Collateral estopped, or issue preclusion, "bars successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment, even if the issue recurs in the context of a different claim." *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008) (internal quotation marks omitted). Unlike claim preclusion, which "forecloses all issues that *could have been* litigated previously," *Brown v. Felsen*, 442 U.S. 127, 139 (1979) (emphasis added), collateral estoppel "treats as final only those questions actually and necessarily decided in a prior suit," *Id.*  Although distinct in operation, both doctrines of claim preclusion and issue preclusion have a common objective—judicial finality. *See Arizona v. California*, 460 U.S. 605, 619 (1983); *see also Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 260 (3d Cir. 2010) (discussing the separate, three-part test for claim preclusion). Relevant here, for collateral estoppel to apply, four requirements must be satisfied:

> "1) the identical issue was decided in prior litigation; 2) there was a final judgment on the merits; 3) the party against whom the bar is asserted was a party or in privity with a party to the prior adjudication; and 4) the party against whom the bar is asserted had a full and fair opportunity to litigate the issue in question."

*Jean Alexnder Cosmetics, Inc. v. L'Oreal USA, Inc.*, 458 F.3d 244, 250 (3d Cir. 2006). The Third

Circuit also considers "whether the party being precluded 'had a full and fair opportunity to litigate the issue in question in the prior action.'" *Id*. "Collateral estoppel . . . has the dual purpose of protecting litigants from the burden of relitigating an identical issue with the same party or his privy and of promoting judicial economy by preventing needless litigation." *Id.* at 254. The party claiming the benefit of estoppel bears the burden of showing that it is appropriate. *Suppan v. Dadonna*, 203 F.3d 228, 233 (3d Cir. 2000).

## II.    Rule 12(b)(1)

A federal Court's "authority under the Constitution is limited to resolving 'Cases' or 'Controversies.'" The doctrine of Article III standing is "an essential and unchanging part of [this] case-or-controversy requirement." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). Federal courts may only adjudicate "actual ongoing controversies between litigants." *Deakins v. Monaghan*, 484 U.S. 193, 199 (1988).

## ARGUMENT

## I.    The Court Should Dismiss the Complaint Because Plaintiff Is Estopped From Re-Litigating His Claims That Were Previously Litigated in the *Ahmed* Class Action.

The court should dismiss Plaintiff's Complaint because Plaintiff is a member of the certified class in *Ahmed*, and his claims have already been litigated in that case. Plaintiff meets the *Ahmed* class definition as someone who "under Section 2502(a)(1)(A) of the Extending Government Funding and Delivering Assistance Act . . . [has] filed . . . an application for asylum." *Ahmed*, ECF No. 103-2, ¶ 1.1. Because the doctrine of collateral estoppel bars successive litigation of issues already litigated and resolved in a federal court, Plaintiff's attempt to relitigate his claim in the present action should be precluded, depriving him of Article III standing in the present action. *See infra* Section I.C

A. **Plaintiff's Allegation of Delay in the Adjudication of His Asylum Application is Identical to the Issue of Delay in the Adjudication of OAW Asylum Applications in** *Ahmed***.**

In determining whether collateral estoppel applies, a court must first establish "[a] showing that the same general legal rules govern both cases and that the facts of both cases are indistinguishable as measured by those rules." *Suppan*, 203 F.3d at 233. Although the facts of the two cases need not be identical, collateral estoppel is appropriate only if any factual differences "are of not legal significance whatever in resolving the issue presented." *U.S. Stauffer Chem. Co.*, 464 U.S. 165, 172 (1984).

Here, Plaintiff alleges that Defendants have failed to timely adjudicate his application for asylum. But his claims are indistinguishable from those presented in *Ahmed*. *First*, both lawsuits contain identical allegations regarding the purported untimely adjudication of asylum applications filed by individual OAW parolees under Section 2502. *See generally Ahmed*, ECF No. 1; *see also* Compl. Specifically, both actions allege that Defendants have violated the non-discretionary obligation imposed by Congress to timely adjudicate the asylum applications of OAW parolees within 150 days of filing under Section 2502. *Ahmed*, ECF No. 1 ¶ 7. ("Defendants failure to act amounts to a repudiation of the non-discretionary obligation imposed by Congress to timely adjudicate the asylum applications filed by Plaintiffs and other similarly situated Afghan refugees within 150 days of filing.") *See* Compl. ¶ 73 ("Defendants have unlawfully withheld and unreasonably delayed ruling on [Plaintiff's] application. Defendants have failed to adjudicate [Plaintiff's] asylum application within the 150-day deadline mandated by law.")

*Second*, both actions assert duplicated causes of action. Both complaints seek a declaration

that the government failed to satisfy a non-discretionary duty to adjudicate the Plaintiff's asylum application within 150 days as Section 2502 required. *Ahmed*, ECF No. 1 ¶¶ 76-83; Compl. ¶ 3. Both seek an order under the APA, 5 U.S.C. § 706(1), to compel the Defendants to expeditiously adjudicate asylum applications within a reasonable time. *Ahmed*, ECF No. 1 ¶¶ 84-91; Compl. ¶¶ 67-76. And both seek relief through a writ of mandamus to compel the government to adjudicate their asylum applications. *Ahmed*, ECF No. 1 ¶¶ 92-99; Compl. ¶¶ 78-83. Thus, the precise issue of delayed adjudication of asylum applications filed by individual OAW parolees under Section 2502 has been previously litigated in *Ahmed*.

### B. The Issue of Alleged Delay in OAW Asylum Applications was Actually Litigated and Necessarily Decided in *Ahmed*.

The next two requirements under collateral estoppel are that the issue must have been actually litigated and necessarily decided. For a court to determine whether an issue has actually been litigated "means that the issue must have been contested by the parties and submitted for determination by a court or other neutral adjudicator." *L'Oreal USA, Inc.*, 458 F.3d at 254 (citing 18 Charles Alan Wright et al., *Federal Practice and Procedure* § 4416, p. 38 (2d ed. 2002). Because "litigants often raise multiple issues that are potentially dispositive of a case, and the courts routinely address them in the interest of providing a complete and thoroughly reasoned decision" permitting re-litigation "would eviscerate a great number of judicial determinations that were the products of costly litigation and careful deliberation." *Id*. at 254-55. Further, the "necessity requirement also ensures that preclusive effect is not given to determinations that did not receive close judicial attention." *Id*. at 250.  Indeed, it is common sense that "later courts should honor the first actual decision of a matter that has been actually litigated." *L'Oreal USA, Inc.*, 458 F.3d at 254.

Here, the issue has already been thoroughly litigated in the proceedings before the *Ahmed*

court in the Northen District of California since the action's outset in April of 2023. The parties submitted substantial briefing on a variety of issues, including class certification, preliminary injunction, dismissal, and the necessity of an administrative record. *See Ahmed*, ECF Nos. 41, 44, 67, 79, 80, 83, 84, 88. Several status conferences were held before District Court Judge Tigar. *See, e.g., Ahmed* ECF Nos. 65, 72. Further, several amici also filed a brief in support of the *Ahmed* Plaintiffs. *See Ahmed*, ECF No. 90.

The parties engaged in numerous settlement discussions to resolve the litigation before the *Ahmed* court over a span of three months before a neutral mediator. *See Ahmed*, ECF Nos. 78, 82, 89, 92, 96, 98, 99, 100, 101, 102. On September 7, 2023, the parties signed a settlement agreement, thereby resolving all claims alleged in the *Ahmed* complaint and stipulation to certification of the class defined in the settlement agreement for settlement purposes only. *Ahmed*, ECF No. 103-2 at 2. On September 7, 2023, Plaintiffs filed an unopposed motion for preliminary injunction approval of the class action settlement, noting that the settlement resolved the claims in the *Ahmed* complaint and resolved the request for injunctive relief to members of the settlement class. *Ahmed*, ECF No. 103 at 8.

The settlement agreement, among other things, imposed timing benchmarks for the asylum application adjudication process and quarterly deadline and monthly status reports. *See Ahmed*, ECF No. 103-2, ¶¶ 2.1-3.5. Defendants remain in compliance with its terms as demonstrated by the monthly status reports filed with the *Ahmed* court in the Northern District of California since 2023. *See Ahmed*, ECF Nos. 108, 109, 110, 111, 112, 113, 115, 116, 117, 118, 119, 120, 121, 123, 124, 125, 126. As evidenced by the extensive litigation that occurred before and entering the settlement agreement and dismissal of the *Ahmed* litigation, the issues Plaintiff raises in his complaint here

were necessarily decided and not "immaterial" to the determination of the issue. *L'Oreal USA, Inc.*, 458 F.3d at 250. Further, courts have found that "judicially approved settlement agreement is considered final judgment on the merits," *Rein v. Providian Financial Corp*., 270 F.3d 895, 902-903 (9th Cir. 2001), and a "dismissal 'with prejudice' is treated as an adjudication of the merits and thus has preclusive effect." *Fairbank's Capital Corp. v. Milligan*, 234 Fed. Appx. 21, 23 (3d Cir. 2007) (citing *Gambocz v. Yelencsics*, 468 F.2d 837, 840 (3d Cir. 1972)).

### i.   The Preclusive Effect of the *Ahmed* Settlement Agreement Is Evident.

Courts in this circuit have found that the preclusive nature of an agreement is based upon the agreed-upon language of the parties, *see Shears v. Dunn*, No. 1:23-cv-00621, 2023 WL 7169071 at *4 (M.D. Pa. Oct. 31, 2023) ("The Settlement Agreement . . . clearly states that the agreement 'does not operate as an adjudication on the merits.'"), and that judicially approved settlements may act as a bar to relitigate claims. *See McFadden v. U.S.*, No. 3:14-cv-1166, 2014 WL 6633251 (M.D. Pa. Nov. 21, 2014) (citing *Toscano v. Connecticut General Life Ins. Co.*, 288 Fed. App'x. 36, 38 (3d Cir. 2008)). Although not all settlement agreements give rise to issue preclusion, the Supreme Court has been clear in delineating that settlements may have an issue-preclusive effect when it is clear that "the parties intend their agreement to have such an effect." *Arizona v. California*, 530 U.S. 392, 414 (2000); *see also Home Depot USA, Inc. v. Lafarge N. Am., Inc.*, 59 F. 4th 55, 64 (3d Cir. 2023).

Here, the prefatory language of the *Ahmed* agreement clearly demonstrates the parties' intent for a preclusive effect. It explicitly states that "Plaintiffs [] agreed to settle all Claims alleged in their Complaint and *to dismiss with prejudice* this Litigation within ten (10) days of the Execution Date, and "the Parties [] agreed to request that the Court *retain jurisdiction* over the Litigation,

*notwithstanding Plaintiffs' voluntary dismissal* of their Claims, to *enforce* the terms of this Settlement Agreement." *Ahmed*, ECF No. 103-2 at 2 (emphasis added) ("Settlement Agreement"). As evinced by the language of the Settlement Agreement, the parties clearly intended for the class members' challenges to the alleged delay in the adjudication of their asylum applications to be dismissed with prejudice, and that any issues regarding the enforcement of the *Ahmed* agreement to be addressed by the court in the Northern District of California.

What's more, paragraph 5.6 explicitly demonstrates the lengthy consideration of the merits prior to entering into the Settlement Agreement:

> Each Party represents, warrants, and agrees that it is entering into this Settlement Agreement knowingly and voluntarily, without duress or undue influence, in good faith, and for sufficient consideration, and that this Settlement Agreement is fair, just, and reasonable as to that Party. Each Party enters into this Settlement Agreement with full knowledge of any and all rights that such Party may have by reason of the claims released herein. Each Party has had available to it such information as such Party or its counsel considered necessary to make an informed judgment concerning this Settlement Agreement, and has conducted such investigation as such Party's counsel deemed appropriate regarding the settlement and its rights and asserted rights in connection therewith.

Settlement Agreement ¶ 5.6. Further, with the inclusion of the jurisdiction-retention provision, it is abundantly clear that the parties intended to cabin any class member challenge to the adjudication of their asylum application within the *Ahmed* litigation:

> The Parties agree that the Court shall retain jurisdiction with respect to implementation and enforcement of the terms of the Settlement Agreement. All Parties hereto submit to the jurisdiction of the Court for purposes of implementing and enforcing the Settlement. Any action to enforce this Settlement Agreement shall be commenced and maintained only in the Court.

Settlement Agreement ¶ 4.2.

The Restatement (Second) of Judgments is also instructive here. *See* Restatement (Second) of Judgments § 27 (1982). A settlement agreement does not bar challenges to issues that were never

actually litigated. *Id* at p. 250; *see also Arizona v. California*, 530 U.S. 392, 414 (2000). Specifically, when an issue was left unaddressed by a settlement, the complaining party was not bound to the settlement and was entitled to litigate to the extent of resolving an unaddressed issue. *Id*. at §§ 28, 78. In contrast, the *Ahmed* settlement agreement addresses the precise challenge brought by Plaintiff: the alleged delay in the adjudication of applications for asylum of individual OAW parolees. *See* Restatement (Second) of Judgments § 27 (1982) (citing *Deminsky v. Arlington Plastics Machinery*, 638 N.W.2d 331, 346, *affirmed as modified* 657 N.W.2d 411 (2003)).

A class action settlement also "preclude[s] class members from re-litigating issues that their representatives litigated in the class suit, but only if the class was certified." 6 Newberg and Rubenstein on Class Actions § 18:24 (6th ed. 2022). The *Ahmed* court granted Plaintiffs' Motion for Class Certification for the purpose of implementing and effectuating the Settlement Agreement—thereby disposing identical challenges to those raised here, with prejudice. *See Ahmed*, ECF No. 105 at 2.

Accordingly, allowing Plaintiff to re-litigate his identical pleading before this Court would eviscerate the numerous judicial determinations that were the products of costly litigation and careful deliberation in the *Ahmed* litigation. *See L'Oreal USA, Inc.*, 458 F.3d 254-55.

## C. Plaintiff is a Mandatory Class Member in the *Ahmed* litigation Making Him a Party That Had a Full and Fair Opportunity to Litigate the Issue of Delay in the Adjudication of His Asylum Application.

The fourth requirement under the collateral estoppel doctrine is that "the party being precluded from relitigating the issue was fully represented in the prior action." *Id*. at 249. As discussed above, the issues in Plaintiff's complaint were fully addressed and extensively litigated in the *Ahmed* litigation. The settlement was "fair, reasonable, and adequate' within the meaning of

Federal Rule 23(e)(2). *Ahmed*, ECF No. 103 at 10. Of note, in Plaintiffs' unopposed motion for approval, Plaintiffs advised that "Plaintiffs and Class Counsel satisfy the adequacy standard because Plaintiffs' claims are identical to the claims of the Class Members and because Class Counsel is capable and experienced in litigating on behalf of noncitizens, including the class action context." *Ahmed*, ECF No. 103 at 7.

Moreover, Plaintiff is a member of a certified Rule 23(b)(2) class seeking injunctive and/or declaratory relief for which there is no opt out. *C.G.B. v. Wolf*, 464 F. Supp. 3d 174, 207 (D.D.C. 2020) (holding "certification of a 23(b)(2) class precludes individual suits for the same injunctive or declaratory relief.") (citing *United States v. Sanchez-Gomez*, 138 S. Ct. 1532, 1538 (2018)). Permitting individual litigation regarding the injunctive relief awarded to Plaintiff as part of their membership in the mandatory class undermines the purpose of the certified (b)(2) class as it impacts the injunctive relief ordered to the class as a whole.

Because the doctrine of collateral estoppel prevents the re-litigation of issues that have been decided in a previous action, Plaintiff is barred from pursuing his claims that have already been litigated before the *Ahmed* court. Thus, Plaintiff is collaterally estopped from establishing that this Court has subject matter jurisdiction over the present action. *See Henry E. & Nancy Horton Bartels Trust ex rel. Cornell Univ. v. United States*, 88 Fed. Cl. 105, 113 (2009) ("it is well-established that the issue of collateral estoppel goes to subject matter jurisdiction because it deals with whether there is an actual "case or controversy" before the Court."); *see also Lowe v. United States*, 79 Fed. Cl. 218, 227-28 (2007) (recognizing that collateral estoppel goes to a court's subject matter jurisdiction).

**D. The Court Should Place Defendants' Response Briefing to Plaintiff's Motion for Preliminary Injunction in Abeyance and Vacate the February 7 Hearing Pending Adjudication of the Order to Show Cause.**

Concurrently, the Court should hold in abeyance the briefing of Defendants' Response to Plaintiff's Motion for Preliminary Injunction (ECF No. 3) pending the Court's decision on the Order to Show Cause. Defendants have been preparing both a Motion to Dismiss under Rules 12(b)(1) and 12(b)(6) and a Response in Opposition to Plaintiff's Motion for Preliminary Injunction in this matter so that all issues appear clearly before the Court. Likewise, Defendants have now prepared this brief in Support of this Court's Order to Show Cause.

The court has *sua sponte* issued a call for a response to a jurisdictional question. If—as Defendants believe—Plaintiff is precluded from bringing this complaint under collateral estoppel, this Court will not need to receive final briefing and hear arguments on Plaintiff's Motion for Preliminary Injunction. More plainly, Defendant's should not be required to oppose a Motion for Preliminary Injunction when this Court itself questions whether it has the ability to hear Plaintiff's Complaint in the first instance.

Moreover, holding Defendants' Response in Opposition in abeyance and vacating the February 7 hearing until a later date causes Plaintiff no harm. As stated in the complaint, Plaintiff is "safe on U.S. Soil." Compl. ¶ 53. Plaintiff's counsel had previously requested a hearing date in mid-February prior to this Court scheduling a Preliminary Injunction hearing for February 7. ECF No. 16. Plaintiff's prior counsel also failed to properly serve the United States for almost three weeks after filing the Complaint and Motion for Preliminary Injunction. It is in the best interest of all those involved to determine jurisdictional reign of this Court prior to submitting additional

briefing on Plaintiff's Motion for a Preliminary Injunction. Thus, the Court should hold all briefing in abeyance and vacate the February 7 hearing pending the Court's decision on the Order to Show Cause.

## CONCLUSION

The Court should find Plaintiff's Complaint is precluded under the doctrine of collateral estoppel, as he has already litigated his claims as a mandatory class member in the *Ahmed* litigation and thus this Court does not have subject matter jurisdiction. Concurrently, the Court should hold in Abeyance Defendants' briefing deadline in opposition of Plaintiff's Motion for Preliminary Injunction and vacate the February 7, 2025, hearing to allow the Court to adjudicate its Order to Show Cause. To the extent the Court denies this request, Defendants respectfully request seven days from the date of the order denying the Order to Show Cause to file a Response in Opposition to Plaintiff's Motion for Preliminary Injunction.

DATED:      January 28, 2025              Respectfully Submitted,


                                          BRETT A SHUMATE
                                          Acting Assistant Attorney General
                                          Civil Division

                                          WILLIAM C. PEACHEY
                                          Director

                                          YAMILETH G. DAVILA
                                          Assistant Director

                                          RUTH ANN MUELLER
                                          Senior Litigation Counsel

                                          */s/ Shane A. Young*
                                          SHANE A. YOUNG
                                          (DC Bar No. 1620020)
                                          Trial Attorney

Office of Immigration Litigation
Civil Division
U.S. Department of Justice
P.O. Box 878, Ben Franklin Station
Washington, DC 20044
Phone: (202) 532-4946
Shane.A.Young@usdoj.gov

*ATTORNEYS FOR DEFENDANTS*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I served a copy of this document on the Court and all parties by filing this document with the Clerk of the Court through the CM/ECF system, which will provide electronic notice and an electronic link to this document to all counsel of record.

DATED: January 28, 2025                    Respectfully submitted,

                                           /s/ Shane A. Young
                                           SHANE A. YOUNG
                                           Trial Attorney
                                           Office of Immigration Litigation
                                           Civil Division

                                           *Attorney for Defendants*