IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| HEZBULLAH KAZIMI, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:24-CV-340 |
| ) | |
| UNITED STATES DEPARTMENT OF ) | |
| HOMELAND SECURITY ("DHS"), et al,) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM ORDER**

Presently before this Court is a Report and Recommendation, along with Objections thereto, addressing an implicit jurisdictional issue raised *sua sponte* by the undersigned. Also pending before the Court is Plaintiff's original motion for preliminary injunction, which implicates the same jurisdictional concern. We begin with a comprehensive review of the factual and procedural history of this short-lived case.

On December 12, 2024, the Clerk of Court received the instant action seeking Government adjudication of Mr. Kazimi's asylum application. The following day, Kazimi, a parolee under the Operation Allies Welcome ("OAW") program, filed a preliminary injunction motion seeking to compel the asylum application decision within ninety days.

According to his verified complaint, Mr. Kazimi is a citizen of Afghanistan who resides in Erie, Pennsylvania and is a parolee seeking asylum in the United States. ECF No. 1, ¶ 1. Beginning in 2018, he trained with the U.S. military and subsequently fought against the Taliban as part of the Afghan National Army. *Id.* at ¶ 17. He was later targeted for retribution by the Taliban. *Id.* at ¶¶ 22, 23, 26, 27. After the United States withdrew its troops in 2021 and the

Taliban regained control of the government, Mr. Kazimi was forced to flee his country leaving behind his family. *Id*. at ¶ 28. He lawfully entered the United States in August 2021. *Id*. at ¶ 5.

A year after entering the U.S., Mr. Kazimi submitted his I-589 application for asylum under § 241(b)(3) of the Immigration and Nationality Act because he fears that he will be persecuted by the Taliban due to (1) his political opinion and (2) his membership in a particular social group. *Id*. at ¶ 42. He explained in his asylum application that, if forced to return to Afghanistan, he fears he will be killed by the Taliban because of his prior employment in the Afghan National Army and his brother's work as a translator for U.S. forces. *Id*. at ¶¶ 44, 19. The USCIS conducted an asylum interview with Mr. Kazimi in Arlington, Virginia on November 1, 2022, and a second interview in Cleveland, Ohio on February 17, 2023. *Id*. at ¶¶ 45, 46.[1]

Under § 2502 of the Extending Government Funding and Delivering Emergency Assistance Act (the "Emergency Assistance Act"), in the absence of "exceptional circumstances," the USCIS must adjudicate the asylum applications filed by Afghan nationals within 150 days. *Id*. at ¶¶ 37, 38, *citing* 8 U.S.C. § 1158. Because the Government failed to act on his asylum petition within the required timeframe, and continues to fail to act in excess of 800 days (as of the initiation of this action in December 2024), Mr. Kazimi filed this action seeking to compel action by the USCIS.[2]

---

[1] Since the filing of this action, Kazimi has had a third interview. *See* ECF No. 42, pages 11-12.

[2] The complaint names as Defendants to this action: the United States Department of Homeland Security ("DHS"); Secretary Alejandro Mayorkas in his official capacity as Secretary of DHS; the U.S. Citizenship and Immigration Services ("USCIS"); Ur Mendoza Jaddou in his official capacity as Director of USCIS; Ted H. Kim in his official capacity as Associate Director of the Refugee, Asylum, and International Operations Directorate at USCIS; and Ron Rosenberg in his official capacity as Director of the USCIS Arlington Asylum Office. The Defendants will collectively be referred to herein as "the Government."

By Order dated January 22, 2025, the undersigned directed the parties to show cause why this case should not be dismissed for lack of jurisdiction, given the class action settlement agreement filed in *Ahmed v. DHS*, 4:23-cv-01892-JST (N.D. Ca. Sept. 11, 2023).[3] The parties responded to the briefing order, with Kazimi arguing that this Court has jurisdiction to decide the matter at hand and with the Government arguing that Kazimi is collaterally estopped from bringing this action. *See* ECF No. 24, 25. Thereafter, the undersigned referred the case and the motion for preliminary injunction to Chief U.S. Magistrate Judge Richard A. Lanzillo for Report and Recommendation. ECF No. 35; 28 U.S.C. § 636.

Judge Lanzillo heard oral argument on the jurisdictional question implicated by the Plaintiff's motion for preliminary injunction.[4] ECF Nos. 40; 42. Supplemental briefing was permitted and thereafter, Judge Lanzillo issued a Report on May 13, 2025, concluding that collateral estoppel is not a bar to subject matter jurisdiction and recommending a finding that the Government did not establish collateral estoppel as a defense to Kazimi's action here. Judge Lanzillo further reported that Kazimi's claims are not moot. Finally, he recommended that the case should be stayed until the first of either a determination of Kazimi's application or the expiration of the *Ahmed* Settlement Agreement. ECF No. 45.

---

[3] In *Ahmed*, seven Afghan nationals residing in the U.S. filed a putative class action against USCIS, DHS, and their officers, alleging a failure to adjudicate asylum applications in a timely manner under the same statute. *See Ahmed v. DHS*, 4:23-cv-01982 (N.D. Ca.). After multiple mediation sessions with a Magistrate Judge, a settlement was reached and U.S. District Judge Jon S. Tigar approved both the class and the settlement. *Id*. In the Agreement, the parties recognize that the statute mandates that all applications will be adjudicated within 150 days after the application is filed, and that the *Ahmed* Plaintiffs alleged that the Government had "a common policy or practice of not complying with the 150-day asylum adjudication deadline" under the statute, and that that conduct violated the Administrative Procedure Act and the Mandamus and Venue Act of 1962. ECF No. 32-1, pages 42-54.

[4] Judge Lanzillo stressed that the argument was limited solely to subject matter jurisdiction, which must be determined prior to addressing the merits of the preliminary injunction motion. *See* ECF No. 42, pages 2, 45.

Defendants filed Objections to the Report and Recommendation. ECF No. 48. In their Objections, the Government argues that this Court lacks subject matter jurisdiction and alternatively, if the Court "assumes jurisdiction," it should stay this action until a determination of Kazimi's asylum application has been made or the expiration of the *Ahmed* settlement agreement. Kazimi has not filed any Objections or any Response to the Government's Objections and the time for doing so has elapsed.

"If a party objects timely to a magistrate judge's report and recommendation, the district court must 'make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made.'" *EEOC v. City of Long Branch*, 866 F.3d 93, 99 (3d Cir. 2017) *quoting* 28 U.S.C. § 636(b)(1). Despite Defendants' arguments, this Court agrees with and will adopt Judge Lanzillo's analysis and reasoning as to the non-jurisdictional nature and qualities of collateral estoppel, as well as the Government's failure to establish collateral estoppel as a defense to Kazimi's action.[5] Similarly, the undersigned agrees with and will adopt Judge Lanzillo's analysis as to mootness. However, this Court declines to stay this case.

In recommending the stay, Judge Lanzillo recited the Settlement Agreement's categories of pending applications – that are based on filing date and duration -- and explained:

> [T]he Settlement Agreement has materially benefited Kazimi in that it recognizes the rights of Class Members, including Kazimi, to a determination of their asylum applications, and it includes timing thresholds that will ensure that the vast majority of those applications are decided before the Settlement Agreement

---

[5] While the Objections have been reviewed, they need not be specifically addressed herein as a district court is not required to make any separate findings or conclusions when reviewing a recommendation *de novo* under 28 U.S.C. § 636. *See Hill v. Barnacle*, 655 Fed. App'x 142, 148 (3d Cir. 2016) ("District courts are not required to make any separate findings or conclusions when reviewing a Magistrate Judge's recommendation de novo under 28 U.S.C. § 636(b). We presume that the District Court engaged in the required *de novo* review absent some indication to the contrary. There is no such indication here because the District Court noted Hill's objections and stated that it reviewed the record independently.") (internal citation omitted).

> expires. Thus, odds are that Kazimi's application will be determined under the Settlement Agreement. But the Settlement does not guarantee such a determination. Despite the favorable odds, Kazimi may find himself to be a Class Member whose application remains pending upon the earlier of October 31, 2025, or when Defendants represent in a public filing that fewer than 200 Class Member asylum applications remain pending. Given this, the most prudent action is to stay this case until the earlier of DHS's determination of Kazimi's asylum application or the expiration of the Settlement Agreement.

ECF No. 45, pages 13-14. Judge Lanzillo's reasoning in this regard is thoughtful, though his interpretation of Kazimi's circumstances in relation to the Settlement Agreement diverges in some key respects from my own reading.

The Settlement Agreement imposes concrete timing thresholds for the adjudication process for the majority of the asylum seekers. The Agreement reads:

> The Parties agree to the following deadlines and requirements related to Class Members asylum applications:
>
> 2.1 Defendants will adjudicate fifty percent (50%) of Class Member asylum applications, that were filed on or before June 3, 2023, by October 31, 2023. Eighty-five percent (85%) of the applications adjudicated under this Section 2.1 will be applications that are or were pending longer than 150 days.
>
> 2.2 Defendants will adjudicate sixty-five percent (65%) of Class Member asylum applications that were filed on or before August 3, 2023, by December 31, 2023. Eighty-five (85%) of the applications adjudicated under this Section 2.2 will be applications that are or were pending longer than 150 days.
>
> 2.3 Defendants will adjudicate ninety percent (90%) of Class Member asylum applications that were filed on or before December 2, 2023, by April 30, 2024. Eighty-five percent (85%) of the applications adjudicated under this Section 2.3 will be applications that are or were pending longer than 150 days.
>
> **2.4 Defendants will adjudicate ninety percent (90%) of Class Member asylum applications *that were filed on or before February 1, 2024*, and that are or were pending longer than 150 days, by June 30, 2024.**
>
> 2.5 Defendants will adjudicate at least ninety percent (90%) of Class member asylum applications, *that were filed on or after February 2, 2024*, no later than 150 days after the date of filing.

5

ECF No. 25-1 (bold and italics added).

While the Settlement Agreement establishes the framework and timeline under which ninety percent of the overall pending asylum applications will ultimately be adjudicated, it is silent as to the residual ten percent of applications.[6] Globally, the Settlement Agreement is set to expire either on October 31, 2025, or when the Government represents that fewer than 200 asylum applications remain pending,[7] whichever occurs sooner. *See* ECF No. 25-1, ¶ 6.1.

Judge Lanzillo focused on the expiration of the entire Settlement Agreement and opined that Kazimi may have a right to relief thereunder until the expiration. However, this Court does not read the broad sunset provision as applicable to Kazimi. Kazimi's circumstances must be examined at a more granular level – the date on which Kazimi loses his right to relief under the Settlement Agreement is June 30, 2024, because by that date all of the relief contemplated in the Agreement would have been afforded to Kazimi's category of asylum applicants. Kazimi falls

---

[6] During oral argument, there was discussion about whether the Government will use its best efforts to adjudicate all of the pending asylum applications. Counsel for the Government indicates that he could not speculate what would happen to the residual applications after the expiration of the Settlement Agreement. *See* ECF No. 42, page 27 (""[I]t's vague on what would happen post November 1. And at this time it's – I don't believe we can speculate on what exactly would happen. […] [W]e can't speculate about exactly what will happen on October 31st or how many applications may be, you know, outstanding at that time."); page 28-29 ("I am not at liberty today to say what the agency may or may not hold at that time or what the government would or would not argue in the October. That is not something that I have discussed or would be able to – to give you a definitive position on that…"). More importantly, the Settlement Agreement itself is absolutely silent as to the residual applications and the Agreement indicates that it "constitutes an integrated contract expressing the entire agreement of the Parties hereto relative to the subject matter discussed herein." ECF No. 32-1, pages 42-54, § 5.3.

[7] The Settlement Agreement directs that the Government file monthly Status Reports. Those status reports have been filed monthly since the settlement was approved by the Court. As of April 27, 2025, the Government's Status Report indicates that the total number of asylum applications received is 21,987 and of those, 20,775 have been adjudicated. *See* www.uscis.gov/Ahmed_v_DHS_Asylum_Report_05112025.pdf.

squarely into § 2.4, as his application was filed prior to February 1, 2024, and was pending longer than 150 days.[8] Section 2.4 guarantees that ninety percent of those applications will be adjudicated by June 30, 2024, and is silent as to the residual ten percent of that category. According to the Government's filing in *Ahmed*,[9] as of June 30, 2024, thirteen hundred ninety-six (1396) of the § 2.4 asylum applications were still pending. The Settlement Agreement makes no mention of what happens to the § 2.4 asylum applications after June 30, 2024. So then, by the terms of the Settlement Agreement, the Government is under no further contractual obligation to adjudicate those § 2.4 asylum applications, like Kazimi's.

Accordingly, this case should proceed. After *de novo* review of the documents in the case, together with the Report and Recommendation and Objections thereto, the following order is entered:

---

[8] According to his verified complaint, Kazimi's application was filed on August 26, 2022. ECF No. 1, ¶ 42.

[9] The Settlement Agreement directs that the Government file "Deadline Reports," separate and apart from the more general monthly status reports. *See* ECF No. 32-1, pages 42-54 ("3.2 To demonstrate compliance with the … June 30, 2024, deadline set forth in Section … 2.4, Defendants shall also file [an] additional Status Reports (the Deadline Reports) with the Court on … July 15, 2024. The Deadline Reports will contain the following information that is necessary to establish Defendants' compliance with Section … 2.4: 3.2.4 The July 15, 2024, Deadline Report will include: (i) the total number of Class Member asylum applications that were filed on or before February 1, 2024; (ii) the total number and percentage of Class Member asylum applications filed on or before February 1, 2024, that were still pending on July 1, 2024; (iii) the total number and percentage of Class Member asylum applications filed on or before February 1, 2024, that were adjudicated as of June 30, 2024; (iv) the total number and percentage of Class member asylum applications filed on or before February 1, 2024, that were adjudicated within 150 days or less of being filed on or before June 30, 2024; (v) the total number and percentage of Class Member asylum applications filed on or before February 1, 2024, that were adjudicated more than 150 days after being filed on or before June 30, 2024; and (vi) the total number of Class Member asylum applications filed on or before February 1, 2024, that remained pending for more than 150 days.").

AND NOW, this 16th day of June 2025;

IT IS HEREBY ORDERED that the Report and Recommendation of Chief Magistrate Judge Lanzillo, issued on May 13, 2025 [ECF No. 45] is adopted in part as the opinion of this Court. *See* 28 U.S.C. § 636(b)(1); Local Rule 72(D)(2) (Regardless of whether timely objections are made, district courts may accept, reject, or modify—in whole or in part-- the magistrate judge's findings or recommendations.). The Report and Recommendation is adopted as to its conclusions regarding subject matter jurisdiction, collateral estoppel, and mootness. No stay will be entered.

IT IS FURTHER ORDERED that, to promote both the efficient resolution of this matter and judicial economy, the prior Order referring the motion for preliminary injunction to Chief Magistrate Judge Richard A. Lanzillo [ECF No. 35] is vacated.

IT IS FURTHER ORDERED that the Government respond to the motion for preliminary injunction by June 20, 2025.

IT IS FURTHER ORDERED that the Government respond to the complaint by June 26, 2025.

FINALLY, the Government is ORDERED to file Notice to Court detailing Kazimi's parole status and asylum application status by June 20, 2025.

/s/ Susan Paradise Baxter
SUSAN PARADISE BAXTER
United States District Judge